ROADWAY EXPRESS, INC., Petitioner,

v.

Elizabeth DOLE, Secretary, U.S.
Department of Labor,
Respondent.

No. 89–4837.

United States Court of Appeals,
Fifth Circuit.

April 29, 1991.

John F. McCarthy, Jr., M. Scott Mc-Donald, Johnson, Bromberg & Leeds, Dallas, Tex., for petitioner.

Mary E. Gleaves, Ann Rosenthal, Robert P. Davis, Sol., U.S. Dept. of Labor, Washington, D.C., for respondent.

Paul Alan Levy, Public Citizen Litigation Group, Alan B. Morrison, Washington, D.C., for intervenor.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Four tractor-trailer drivers, Archie Long, Gail Clark, Thomas Palmer, and Roger Schlapp, filed "whistle-blower" complaints with the Secretary of Labor, alleging that their employer, Roadway Express, Inc. ("Roadway"), discriminatorily withheld delay-time compensation in violation of § 405(b) of the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. App. § 2305 (1982). The discrimination allegedly stemmed from the employees' refusal to drive the company's trucks during a hazardous ice storm. The Secretary determined that Roadway's failure to compensate the drivers resulted in a per se violation of § 405(b), notwithstanding Roadway's argument that the drivers were not discriminated against because they were not otherwise entitled to delay-time compensation under the terms of the applicable collective bargaining agreement. Although we reject the Secretary's argument that a per se violation occurred, we affirm her decision and order because we find substantial evidence to support her alternative holding that Roadway discriminated against the four drivers.

## I

During the early morning hours of December 26, 1987, Roadway dispatched twelve of its tractor-trailer drivers to haul freight from its terminal in Irving, Texas, to Pecos, Texas, a distance of approximately 420 miles. Included among these drivers were the four complainants: Long, Clark, and Palmer, who were each pulling two short trailers, and Schlapp, who was pulling a single trailer loaded with hazardous materials. Approximately 115 miles west of Irving and 20 miles east of Eastland, Texas, all twelve drivers encountered hazardous driving conditions caused by freezing rain.

Long and seven other drivers reached Eastland first. They decided to stop in order to assess weather conditions farther west. Long called the dispatcher at Roadway's terminal in Irving and informed him that he and the others had decided to wait in Eastland until the weather improved. The dispatcher then authorized three 2-hour delays in succession. Finally, six hours later, Long called the dispatcher and told him that he was in a motel in Eastland and was going to stay there until the next morning. The dispatcher asked Long if he was taking himself "out of service," and Long responded, "Whatever."

Clark, Palmer, and Schlapp, who were traveling together in convoy, had maintained contact with the other drivers ahead of them through their citizen band radios. They also decided to stop in Eastland. Clark contacted the Roadway dispatcher and informed him that she and the other two employees could not safely continue driving to Pecos until the icy condition of the highway improved. The dispatcher asked Clark if she was voluntarily relieving herself of duty. She responded that she did not care what he called it, but that it was too unsafe to drive. Clark then told the other two employees that she had informed the dispatcher that they had elected to cease driving because of the dangerous condition of the highway.

These drivers were aware at this time that one of the twelve Roadway drivers, Louis Bohannon, had already passed through Eastland. Unlike the others, however, he had elected to continue driving to Pecos. Bohannon was the only one of Roadway's employees to reach Pecos without any layovers.

The next morning, the remaining eleven Roadway drivers left Eastland. Although the weather conditions had slightly improved, both Clark and Palmer were delayed again by the weather for approximately ninety minutes in Tye, Texas. All the eleven drivers reached Pecos on the second day.

Roadway paid all of its drivers their regular compensation for the 420-mile trip from Irving to Pecos. In addition, Roadway paid for the cost of the motels and some meals for the eleven drivers who chose to stay in Eastland. Roadway, however, refused to pay Long, Clark, Palmer, or Schlapp for their overnight layover in Eastland or Clark and Palmer for their ninety-minute layover in Tye because its dispatcher did not authorize the delays.

## II

Long, Clark, Palmer, and Schlapp filed complaints with the Secretary of Labor, arguing that Roadway violated § 405(b) of STAA when it failed to pay the drivers for the delays they incurred for refusing to operate their tractor-trailers during hazardous weather conditions. Section 405(b) states:

No person shall discharge, discipline, or in any manner discriminate against an employee with respect to the employee's compensation, terms, conditions, or privileges or employment for refusing to operate a vehicle when such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, or because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona

fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.

49 U.S.C. App. § 2305.

The Occupational Safety and Health Administration ("OSHA") found reasonable cause to believe that Roadway had violated the employee protection provision of STAA and ordered the company to pay the drivers the withheld compensation. Roadway objected to this finding and requested a hearing before a Department of Labor Administrative Law Judge ("ALJ").

At the conclusion of an evidentiary hearing on February 17, 1989, the ALJ found that Roadway did not *discriminate* against the drivers by refusing to pay for the layovers. There was no discrimination because such payments were not required for such layovers under Article 5, Section 4 of the collective bargaining agreement. Article 5, Section 4 states:

> On breakdowns or impassable highways, employees on all runs shall be paid the minimum hourly rate for all time spent on such delays, commencing with the first hour or fraction thereof, but not to exceed more than eight (8) hours out of each twenty-four (24) hour period.

According to decisions of the Southern Multi–State Grievance Committee, a highway is "impassable" only when local law enforcement officials or the state highway patrol has closed it or when no driver has successfully negotiated the same route. The ALJ concluded that under this interpretation of the agreement, the route from Eastland to Pecos was not impassable. Thus, on May 16, 1989, the ALJ issued a Recommended Decision and Order, holding that Roadway did not discriminate against the drivers by refusing to pay them what they would not otherwise be entitled to receive under the collective bargaining agreement.

On September 15, 1989, the Secretary issued a Decision and Remand Order rejecting the ALJ's conclusion. She determined that Roadway had violated § 405(b) because the company had refused to compensate the drivers when they exercised their rights under STAA to cease driving in unsafe conditions. She concluded that Roadway's asserted reason for refusing to authorize and pay for the delays, that such compensation was not required under the terms of the collective bargaining agreement, was a pretext for discrimination. She thus remanded the case to the ALJ for the calculation of damages.

On January 26, 1990, the ALJ issued a Recommended Decision and Order, awarding Long and Schlapp each the sum of $196.62 and Clark and Palmer the sum of $218.60 each. The Secretary issued a Final Decision and Order on March 9, 1990, adopting the ALJ's recommendations and ordering Roadway to pay the compensation withheld in violation of § 405(b). Roadway filed a timely petition for review. *See* 49 U.S.C. App. § 2305(d)(1).

### III

We are authorized by statute to set aside the Secretary's decision if it constitutes an abuse of discretion or is unsupported by substantial evidence. 5 U.S.C. § 706. Although we review the Secretary's decision, and not the ALJ's, 5 U.S.C. § 557(b), we note that the Secretary is required to consider conclusive the ALJ's factual findings, if supported by substantial evidence. 29 C.F.R. § 1978.109(c)(3).

### A

Roadway continues to argue at this late stage of the proceedings that the drivers failed to establish a prima facie case of discrimination under § 405(b). We decline Roadway's invitation to revisit the question whether the drivers made out a prima facie case. Because the case has been fully tried and we thus have a fully developed record before us, the focus of our inquiry is on the ultimate question of discrimination. *See United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

In this respect, Roadway contends that the Secretary's decision should be reversed because the drivers were not entitled to delay-time pay under the collective bargaining agreement and thus suffered no adverse employment action resulting from their refusal to continue driving during the dangerous ice storm. In other words, Roadway contends that its election to deny delay-time compensation to the four drivers when it had no obligation to grant it, does not constitute retaliation.

Roadway concedes that its employees' decision to cease driving under what they perceived to be hazardous conditions was protected activity under STAA.[1] Roadway argues, however, that whether its drivers had the right to discontinue the trip is not an issue in this case because its dispatcher did not order the four drivers to continue driving to Pecos. The issue, Roadway says, is whether it discriminated against the drivers by refusing to pay them for the unauthorized delays. Because they were clearly not entitled to such payments under the collective bargaining agreement and because the ALJ stated in his recommended decision that Roadway followed the "impassable highway" provision of the agreement in a non-discriminatory manner, the drivers failed to establish discrimination under § 405(b) of STAA.

■ On the other hand, the Secretary argues that Roadway's actions constitute a per se violation of § 405(b). Under STAA, Roadway's employees are permitted to cease driving whenever they have a reasonable apprehension of danger to themselves or to the public because of unsafe driving conditions. The Secretary contends that Roadway's refusal to authorize a delay under those circumstances results in discrimination when, as in this case, drivers are denied compensation for unauthorized delays.

The Secretary insists that it is not necessary for the four drivers to prove that they were treated differently from other similarly situated Roadway employees in order to establish discrimination. In support of this contention, she cites an opinion from the Sixth Circuit Court of Appeals holding that evidence of disparate treatment is not a required element of a claim under the whistleblower provision of the Energy Reorganization Act of 1974, 42 U.S.C. § 5851(b). *DeFord v. Secretary of Labor*, 700 F.2d 281, 286 (6th Cir.1983). In that case, the Sixth Circuit reasoned that "[a]n employer should not escape liability upon an otherwise valid claim, ... solely because it chose to discriminate against three similarly situated employees rather than only one." *Id.*

Alternatively, the Secretary contends that there is substantial evidence in the record indicating that Roadway had on past occasions authorized its employees to discontinue their trips even when they would not be entitled to delay-time compensation under the collective bargaining agreement. On this premise, the Secretary urges us to reject the "impassable highway" provision of the collective bargaining agreement as a legitimate nondiscriminatory reason for Roadway's refusal to authorize or pay for the delays.

■ Indeed, she regards the agreement as wholly irrelevant to the disposition of this case. First, she insists that the collective bargaining agreement is not inconsistent with Roadway's obligation to provide delay pay because the agreement does not expressly prohibit Roadway from paying compensation under circumstances other than those mandated by the "impassable highway" provision. Second, she maintains, and correctly so, that if the collective bargaining agreement conflicts with STAA, then the statute supersedes the agreement because labor contracts cannot operate to deprive employees of rights specifically protected by federal statutes. *See, e.g., Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740–41, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1980) (employee's right under FLSA not waived by conflicting compensation provision in collective bargaining agreement).

---

1. Because of this stipulation by Roadway, we do not decide the issue of whether the drivers were protected under § 405(b) of STAA in refusing to drive because of unsafe weather conditions.

We note that Congress included § 405(b) in the Surface Transportation Assistance Act to insure that employees in the commercial motor transportation industry who make safety complaints, participate in STAA proceedings, or refuse to commit unsafe acts do not suffer adverse employment consequences because of their actions. 128 Cong.Rec. 29192, 32510 (1982). Section 405(b) states expressly that *no person shall discriminate* against an employee with respect to the employee's compensation for refusing to operate a vehicle when to do so would violate a federal safety regulation or because of the employee's reasonable apprehension of unsafe conditions.

The dispute in this case arises because of the incongruity between the discrimination provisions of § 405(b) and the compensation provisions of the collective bargaining agreement: Section 405(b) protects an employee from discrimination if he refuses to drive because of reasonable apprehensions of serious injury; the collective bargaining agreement, however, provides compensation only for delays resulting from such safety concerns under much narrower circumstances, that is, only when the highway is officially closed or no other driver has negotiated the same route. As stated previously, the Secretary does not interpret the agreement as being inconsistent with the statute, arguing that the agreement does not actually prohibit the employer from providing compensation under other circumstances, such as those described in § 405(b). The Secretary, however, equates a driver's right under STAA to cease driving with his right to obtain delay-time compensation from his employer. Otherwise, she contends, the collective bargaining agreement would have a chilling affect on the protected right of the employee to cease driving when inclement weather causes unsafe road conditions.

Roadway, of course, argues that the right of an employee to stop driving is separate from his right to receive compensation for delays. Thus, in order for the drivers in this case to establish a violation of STAA, they had to show that the company discriminated against them, that is, it refused to pay delay-time compensation to these drivers that otherwise they were entitled to receive.

■ We agree with this analysis of § 405(b). Section 405(b) protects employee "whistleblowers" from discriminatory employment action: It does not, however, confer any special benefit on them for whistleblowing. Certainly in this case it does not require Roadway to pay its drivers for delays unless the company has otherwise obligated itself to do so. Section 405(b) guarantees these drivers *equal* economic treatment compared to other similarly situated drivers, not special economic treatment. In the end, our analysis is quite simple: We look to the plain words of the statute. It provides that no person shall *discriminate* against an employee with respect to the employee's compensation. Whether there is discrimination in compensation must, *per force*, be determined by comparing the denial of compensation to some established or expected norm, i.e., occasions on which compensation is paid. Thus, here, the Secretary must show some basis for an entitlement to the compensation that these employees have been denied.[2]

■ It is on this rationale that we are able to affirm the Secretary's order. Even though we disagree with much of the Secretary's reasoning, we ultimately find substantial evidence in the record to support her alternate conclusion. We uphold her conclusion that the company discriminated

---

**2.** Given this definition of discrimination, we discern no conflict between our opinion today and the Sixth Circuit's opinion in *DeFord.* In *DeFord,* the Tennessee Valley Authority demoted one of its employees in retaliation for his participation in a government investigation under the Energy Reorganization Act of 1974, 42 U.S.C. § 5851. The Sixth Circuit found substantial evidence supporting the employee's discrimination claim, even though there was no proof that he was treated any differently from other similarly situated participants in the investigation. *See DeFord,* 700 F.2d at 286. Applying our analysis, the employee in *DeFord* established an entitlement to the job he occupied and therefore established unlawful discrimination when he was removed from it for an impermissible reason.

against the four drivers because it paid other similarly situated employees delay-time compensation under circumstances not covered by the collective bargaining agreement. For example, William Kidwell, Roadway's relay manager at the Irving terminal, testified at the hearing before the ALJ that Roadway sometimes paid delay-time compensation when a dispatcher authorized the driver to shut down because of weather conditions, even if the highway had not been closed or another driver had passed through the same route. His testimony, and the testimony of Palmer and Clark to the same effect, substantially supports the Secretary's conclusion that Roadway *discriminated* against these drivers, viz a viz other similarly situated drivers, in violation of § 405(b): It authorized and paid compensation to these drivers under similar circumstances in which it refused to authorize and pay the complainants who asserted their rights under STAA and refused to risk the unsafe conditions.

■ We do not believe that this conclusion contradicts the ALJ's findings of facts. Indeed, the ALJ's recommended decision did not address the question of whether Roadway's previous practices included compensation for similar delays. It is true that he held that Roadway did not act arbitrarily in applying its compensation policy. He made this statement, however, in response to the drivers' argument that the compensation policy violated the specific provisions of § 405(b) and was therefore discriminatory when it was applied to them. We agree with the Secretary that this was the ALJ's *legal* conclusion and that she was free to review the record to determine whether, when compared to its previous practices in similar situations, Roadway discriminatorily withheld the payments.

In sum, although we do not agree with the Secretary's contention that evidence of disparate treatment is not a required element of proof for a STAA claim, we nevertheless find substantial evidence in the record supporting her conclusion that Roadway unlawfully discriminated against the four drivers when it refused to pay them delay-time compensation.

## B

Roadway next argues that because the Secretary issued her final decision more than 120 days after the conclusion of the evidentiary hearing, the drivers lose their rights to assert their discrimination claim. The procedural rules for STAA proceedings require that "[u]pon the conclusion of [the final] hearing, the Secretary of Labor shall issue a final order within one hundred and twenty days." 49 U.S.C.App. § 2305(c)(2)(A) (1982). Roadway contends that the Secretary issued her decision after either 209 or 122 days, depending on whether the relevant time period is measured from the date the ALJ concluded his hearing on February 17, 1989, or from the date he issued his recommended decision on May 16, 1989. If the former, then the Secretary issued her remand order 209 days after the hearing on September 16, 1989. If the latter, then she issued her decision 122 days after the hearing.

Although conceding that she may have issued her decision two days late or 122 days after the hearing, the Secretary also argues that if her order remanding the case to the ALJ to assess damages reopened the hearing, then the hearing did not conclude until the ALJ issued his decision on January 26, 1990. If so, then she issued her final order just 42 days after the hearing on March 9, 1990.

■ For our purposes today, we will accept Roadway's contention that the Secretary issued her decision two days late. *See* 29 C.F.R. § 1978.109(a) (for purposes of statute, hearing concludes upon issuance of ALJ's decision). We reject Roadway's argument, however, that the regulatory time restrictions in STAA are jurisdictional, rather than directory in nature. We have held that an agency does not lose jurisdiction for failing to comply with statutory time limits unless the statute both expressly requires the agency to act within a specified period and states a consequence for failing to comply. *See Fort Worth Nat'l Corp. v. Federal Savs. & Loan Ins. Corp.,* 469 F.2d 47, 58 (5th Cir.1972).

We are not unmindful of the need for the expeditious consideration and disposition of complaints filed under STAA and the hardship the employer or employee may suffer when the proceedings are unnecessarily delayed. We are also aware that the Supreme Court has expressed concern about the inordinate amount of time involved in STAA actions. *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 270–71, 107 S.Ct. 1740, 1752, 95 L.Ed.2d 239 (1987) (Brennan, J., dissenting) (describing time restrictions as "overly generous").

In this case, however, Roadway has not demonstrated any actual prejudice as a result of the two-day delay. Moreover, the ALJ did not issue his decision until almost three months after the evidentiary hearing. If time had been Roadway's real concern, it seems to us that it might have initiated an action to compel the ALJ to issue his decision within the regulatory 30 days following the close of the record. 29 C.F.R. § 1978.109(a). As it is, we see no reason to deny the drivers their remedy under the whistleblower provision of this statute merely because of the Secretary's failure to issue her decision within 120 days.

C

Finally, Roadway argues that the Secretary erred in awarding $196.62 each to Long and Schlapp and $218.60 each to Clark and Palmer, because the amount of damages the Secretary assessed is higher than the drivers are entitled to receive under the collective bargaining agreement. Under Article 50, Section 4 of the agreement, employees receive the minimum hourly rate, or $14.65 per hour, for all time spent on delays, not to exceed more than eight hours out of each 24–hour period. Thus, under the agreement, the maximum amount the drivers are entitled to receive for their overnight layover in Eastland is $117.20 because there was only one dispatch from Irving to Pecos.

The Secretary, however, determined that regardless of the collective bargaining agreement, if Roadway had authorized the delay in Eastland, it would have paid its drivers for two dispatches, one from Irving

to Eastland and the second from Eastland to Pecos. She thus concluded that each of the four drivers was entitled to receive $117.20 for the eight-hour delay in Eastland and $117.20 for each of the two dispatches, or a total of $351.60. She then subtracted from this amount $154.98, the mileage pay received by the drivers for the dispatch from Irving to Pecos, and reached a net total of $196.62. She added $21.98 to the amount awarded Clark and Palmer for a total of $218.60 because of their additional 90–minute delay in Tye.

We agree with the Secretary that the drivers are entitled to receive what they would have been paid had there been no discrimination. We find substantial evidence supporting the Secretary's conclusion that despite the express provisions of the collective bargaining agreement, it was Roadway's practice to pay its drivers for two dispatches when their trips are delayed overnight because of bad weather. Her assessment of damages, therefore, is amply supported and will not be disturbed.

IV

For the foregoing reasons, the Secretary's decision and order holding that Roadway unlawfully discriminated against the drivers is

AFFIRMED.