**REVISED December 29, 2014**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

13-60323

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2014

Lyle W. Cayce
Clerk

HALLIBURTON COMPANY,

Petitioner,

v.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES DEPARTMENT
OF LABOR,

Respondent.

Petition for Review of an Order of the
United States Department of Labor

Before STEWART, Chief Judge, DENNIS, Circuit Judge, and GILSTRAP,
District Judge.*

PER CURIAM:

Anthony Menendez, an employee of Halliburton, used the company's internal procedures to submit a complaint to management about what he thought were "questionable" accounting practices. Menendez also lodged a complaint about the company's accounting practices with the Securities and Exchange Commission ("SEC"), which led the SEC to contact Halliburton and instruct it to retain certain documents during the pendency of the SEC's

---

* District Judge of the Eastern District of Texas, sitting by designation.

investigation.    When Halliburton received the SEC's notice of the investigation, the company inferred from Menendez's internal reports that Menendez must have reported his concerns to the SEC too.  Halliburton sent an email to Menendez's colleagues that instructed them to start retaining certain documents because "the SEC has opened an inquiry into the allegations of Mr. Menendez."   Once his identity as the whistleblower was disclosed, Menendez's colleagues, whom he had essentially accused of fraud, began treating him differently, generally refusing to work and associate with him. The Administrative Review Board of the Department of Labor determined that the company's disclosure to Menendez's colleagues of his identity as the SEC whistleblower who had caused an official investigation, thus resulting in Menendez's workplace ostracism, constituted illegal retaliation under § 806 of the Sarbanes-Oxley Act ("SOX").  *See* 18 U.S.C. § 1514A(a).  For the reasons that follow, we affirm.

## I. BACKGROUND

### A. *Facts*

Menendez was hired by Halliburton, a global energy products and services company, in March 2005 as Director of Technical Accounting Research and Training in the Finance and Accounting department of the company's Houston office.  In that position, Menendez monitored accounting issues and gave advice and training to field accountants.  He reported directly to Mark McCollum, Chief Accounting Officer.

In July 2005, Menendez raised concerns that some of Halliburton's accounting practices involving revenue recognition did not conform with generally accepted accounting principles.    Menendez circulated a memorandum on the revenue recognition issue to colleagues within his department, including his direct supervisor, McCollum.  McCollum met with

No. 13-60323

Menendez and suggested that, although the memorandum was good, Menendez was not a "team player" and needed to work more closely with colleagues to resolve any concerns over accounting practices. Halliburton ordered a new study of the revenue recognition issue, and, in October 2005, the study concluded that the company's practices were proper. That same month, Menendez sought another meeting with McCollum regarding the revenue recognition practices, but McCollum declined to meet with Menendez again.

On November 5, 2005, Menendez filed a confidential complaint with the SEC alleging that Halliburton was engaged in "questionable" accounting practices with respect to revenue recognition. After submitting the SEC complaint, Menendez continued to try to engage the company on the issue. In late 2005, he contacted Charles Muchmore, the Vice President of Financial Controls, who, after following up on Menendez's concerns and deciding that they lacked merit, suggested to Menendez that he go to the Audit Committee of the Board of Directors if he felt strongly enough about the issues. As required by SOX, the Audit Committee had "establish[ed] procedures for" "the confidential, anonymous submission by employees of the [company] of concerns regarding questionable accounting or auditing matters." *See* 15 U.S.C. § 78j-1(m)(4)(B). According to the Audit Committee's policy, "[employees] can report [their] concerns anonymously or confidentially" and "[their] confidentiality shall be maintained," subject to certain exceptions not relevant here.[1] To report such concerns, the Audit Committee instructed employees to call a listed number or to write or email the Board of Directors.

---

[1] "[C]onfidentiality shall be maintained unless disclosure is: [1] Required or advisable in connection with any governmental investigation or report; [2] In the interests of the Company, consistent with the goals of the Company's Code of Business Conduct; [3] Required or advisable in the Company's legal defense of the matter."

3

No. 13-60323

On February 4, 2006, Menendez emailed Halliburton's Board of Directors to make the same complaint as he had made to the SEC. Menendez's internal complaint, which was sent from his company email address and included his name, was forwarded to Bert Cornelison, Halliburton's General Counsel. A few days later, on February 8, the SEC contacted Cornelison to notify Halliburton that it was investigating the company's allegedly improper accounting practices and that the company was directed to retain certain documents relating to the investigation. The SEC did not specify who had reported Halliburton's accounting practices, but Cornelison, having seen Menendez's internal complaint, surmised that Menendez must have been the source of the SEC complaint as well. Cornelison sent an email to Menendez's boss, McCollum, and others, instructing them to preserve documents relevant to the SEC's investigation, as directed, because "the SEC has opened an inquiry into the allegations of Mr. Menendez." That same day, McCollum forwarded the email identifying Menendez as the whistleblower to fifteen members of Menendez's work group, including Menendez himself, thus alerting them to the SEC's investigation and to the fact that Menendez had complained to the SEC about the propriety of their accounting practices.

Menendez was horrified when he saw the email disclosing his identity as the SEC complainant, and he described that day as one of the worst in his life. Colleagues began to treat him differently, generally avoiding him. Menendez missed work frequently after the revelation, showing up at the office only sporadically and, in early March, requested paid administrative leave "given the current environment and circumstances involving the SEC investigation." The company granted the request.

On September 19, 2006, the SEC concluded that no enforcement action against Halliburton was recommended. On October 17, 2006, Menendez

resigned from Halliburton, stating in his resignation letter that he could not "professionally and ethically" return to the company while it persisted in accounting practices that, he continued to maintain, were improper. He had accepted a consultant position at a law firm during his leave of absence.

## B. *Procedural History*

On May 8, 2006, Menendez filed a complaint with the Occupational Safety and Health Administration of the Department of Labor pursuant to § 806 of SOX, the antiretaliation provision, alleging that Halliburton retaliated against him because of his complaints about the company's accounting procedures by disclosing his identity as the whistleblower to his colleagues. The Assistant Secretary for Occupational Safety and Health dismissed the complaint, and Menendez requested a hearing before an Administrative Law Judge. Following a hearing that included several days of testimony, the Administrative Judge issued a decision and order dismissing the complaint. The Administrative Judge concluded, among other things, that, although Menendez's reports to the SEC and the company were protected conduct, the disclosure of his identity was not an "adverse action" (a required element of an antiretaliation claim under SOX) because none of the workplace harm Menendez suffered as a result of being identified as the whistleblower rose to the level of being "materially adverse." Menendez appealed.

On appeal, the Administrative Review Board affirmed the Administrative Judge's conclusion that Menendez engaged in protected conduct but found that the Administrative Judge had erred in determining that the disclosure was not an "adverse action." Contrarily, the Review Board held, under the facts of this case, the disclosure rose to the level of "material adversity." The Review Board remanded to the Administrative Judge for findings on whether Menendez's protected activity was a "contributing factor"

5

No. 13-60323

in Halliburton's disclosure of his identity and whether Halliburton had satisfied its burden of establishing, as an affirmative defense to the retaliation claim, that "legitimate business reasons" mandated the disclosure of Menendez's identity.

On remand, the Administrative Judge held that Halliburton had shown a legitimate business reason for disclosing Menendez's identity as the whistleblower. Specifically, the Administrative Judge found that Halliburton did not intend negative consequences for Menendez and rather believed that, by indicating that the company knew he was the whistleblower, it would show him that the company was seeking to address his concerns. However, recognizing that the Review Board may determine that he had erred, the Administrative Judge held in the alternative that, if he is reversed on liability, $1,000 in damages would be appropriate. The Administrative Judge explained that, although Menendez suffered emotional distress and, to a limited extent, certain reputational injury, the harms were not significant. The Administrative Judge further held in the alternative that, if the Review Board finds his damages award to be inadequate, $30,000 in damages would be appropriate instead. Menendez again appealed.

In the decision that is now under review, the Review Board reversed the Administrative Judge on the affirmative defense, thus holding Halliburton liable for retaliation. As for damages, the Review Board affirmed the Administrative Judge's alternative award of $30,000 in compensatory damages for emotional distress and reputational harm. Halliburton petitioned this court for review.

## II. STANDARD OF REVIEW

"[O]ur review is governed by the standard established in the Administrative Procedure Act." *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476

No. 13-60323

(5th Cir. 2008) (citing 5 U.S.C. § 706).  The Review Board's decision "will be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.'"  *Id*. (quoting 5 U.S.C. § 706(2)(A)).  "Factual findings are subject to substantial evidence review."  *Id*.  "[C]onclusions of law are reviewed de novo."  *Id*.

## III. DISCUSSION

Menendez's antiretaliation claim arises under § 806 of SOX, codified at 18 U.S.C. § 1514A, which "creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity."  *Id*. at 475.  The statute states, in relevant part:

> No [public company][2] may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [certain protected whistleblowing activity].[3]

---

[2] We use "public company" as shorthand for a "company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c), or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization."  18 U.S.C. § 1514A(a).  There is no dispute in this appeal that Halliburton constitutes such a public company.

[3] The whistleblowing activity protected under the statute includes any lawful act done by the employee—

> (1)    to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

No. 13-60323

18 U.S.C. § 1514A(a).   To prevail on an antiretaliation claim under that provision, the employee must prove, by a preponderance of the evidence, that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in the protected activity, (3) he suffered an "adverse action,"[4] and (4) the protected activity was a "contributing factor" in the "adverse action." *Allen*, 514 F.3d at 475-76.

In this appeal, Halliburton does not challenge the Review Board's conclusions that (1) Menendez engaged in protected activity when he reported his concerns about Halliburton's accounting practices to the SEC and the Board of Directors, and (2) Halliburton knew that Menendez engaged in such reporting.   Halliburton does, however, challenge the conclusions that (3) Menendez suffered an "adverse action" when the company disclosed his identity as the whistleblower to his colleagues, and (4) Menendez's protected

---

   (A)   a Federal regulatory or law enforcement agency;

   (B)   any Member of Congress or any committee of Congress; or

   (C)   a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

(2)   to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

18 U.S.C. § 1514A(a).

   [4] What we, like the parties to this appeal, here refer to as an "adverse action" is sometimes alternatively called an "unfavorable personnel action."  *See, e.g.*, *Allen*, 514 F.3d at 476.  The difference is semantic, not substantive.

activity was a "contributing factor" in the disclosure, as that element should be understood.  We address the "adverse action" arguments first.

## A. *Adverse Action*

Halliburton challenges the Review Board's conclusion that Menendez suffered an "adverse action" when the company disclosed his identity as the whistleblower to his colleagues.  To put the argument in context, we start with background legal principles.

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court addressed the antiretaliation provision in Title VII of the 1964 Civil Rights Act, which generally prohibits employers from retaliating against employees who report employment discrimination based on "race, color, religion, sex, or national origin."  *See* 42 U.S.C. §§ 2000e-2, 2000e-3.  An antiretaliation claim under Title VII, like an antiretaliation claim under SOX, requires a showing of an "adverse action" the employer imposed on the employee.  In *Burlington*, the Court addressed, among other things, "how harmful [the adverse] action must be to constitute retaliation."  548 U.S. at 60.  The Court answered that, "the [adverse] action [must be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 67-68 (internal quotation marks and citation omitted).  "We speak of *material* adversity because we believe it is important to separate significant from trivial harms."  *Id.* at 68.  "We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective."  *Id.*

Subsequently, in this court's decision in *Allen v. Administrative Review Board*, we concluded that the *Burlington* material-adversity standard applied to SOX's antiretaliation provision as well as Title VII's.  514 F.3d at 476 n.2.  Thus, under *Allen*, a SOX antiretaliation claim requires an "adverse action"

No. 13-60323

that meets *Burlington*'s definition of material adversity, *i.e.*, an action harmful enough that it well might have dissuaded a reasonable worker from engaging in statutorily protected whistleblowing. Here, the Review Board found that Halliburton's disclosure to Menendez's colleagues of his identity as the whistleblower who had reported them to the authorities, thus invoking an official investigation, constituted such an "adverse action."[5]

Halliburton contends that the Administrative Judge, who ruled in the company's favor, correctly applied the *Burlington* standard to hold that Halliburton's disclosure of Menendez's identity was not "materially adverse," and, in reaching the opposite conclusion, the Review Board "disregarded" the

---

[5] As an initial matter, Halliburton contends that the Review Board should be reversed because its "perplexing and contradictory" opinion does not apply the proper standard, that is, *Burlington*'s material-adversity standard, but rather applies a lesser standard of some sort, which would be clear error in light of *Allen*, 514 F.3d at 476 n.2. Certain language in the Review Board's opinion suggests that Halliburton is correct. For example, parts of the opinion suggest that the *Burlington* standard does not "control" because it is not "broad" enough, but it is "compelling" and a "helpful guide." We agree with Halliburton that this language is troubling, but we conclude that it is dicta. After those parts of the opinion that Halliburton points to as problematic, the opinion concludes that Halliburton's disclosure of Menendez's identity as the whistleblower "constituted adverse action," and, importantly, in so holding, the opinion cites *Burlington* in a footnote. It proceeds to state:

> Menendez need only demonstrate that [Halliburton's conduct] would deter a reasonable person from engaging in protected activity. Clearly, a reasonable employee in Menendez's position would be deterred from filing a confidential disclosure regarding misconduct if there existed the prospect that his identity would be revealed to the very people implicated in the alleged misconduct.

This explanation of what Menendez "need demonstrate"—that the company's conduct "would deter a reasonable person from engaging in protected activity"—represents a restatement of the *Burlington* material-adversity standard. *See Burlington*, 548 U.S. at 67-68. Therefore, we read the Review Board to have applied the proper standard, as required by *Allen*, and we understand language in the opinion that appears otherwise to be unfortunate dicta. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007) ("We are not persuaded that this statement constitutes the type of error that requires a remand. . . . The Federal Register statement . . . was dictum, and it had no bearing on the final agency action that respondents challenge.").

10

Administrative Judge's factual findings. "In the end," the company says, the difference "was a factual one." Citing *Stone & Webster Construction., Inc. v. Department of Labor*, 684 F.3d 1127, 1132 (11th Cir. 2012), Halliburton contends that, because the Review Board substituted its own view of the facts for the Administrative Judge's factual findings, this court should vacate the Review Board's decision and reinstate the Administrative Judge's.

Halliburton's argument is flawed in that it rests on a false premise. The company's assumption that an "adverse action" determination under *Burlington* is a purely factual determination is incorrect. It is not. The pure facts are the "who," "what," "when," "where," and "how" of the circumstances underlying Menendez's claim of retaliation. *See Thompson v. Keohane*, 516 U.S. 99, 109-10 (1995) (in the context of habeas corpus law, describing "issues of fact" to mean issues of "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators") (citing *Townsend v. Sain*, 372 U.S. 293, 309 n.6 (1963)); Black's Law Dictionary (9th ed. 2009) (defining "fact" as "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation"). For example, it is a pure fact here that Cornelison's email to McCollum, which was forwarded to Menendez's colleagues, identified Menendez as the whistleblower. The *Burlington* standard asks whether a company's actions were such that they "well might have dissuaded a reasonable worker from [engaging in protected conduct]." 548 U.S. at 67-68 (internal quotation marks and citation omitted). Whether in its context a company's conduct well might dissuade a "reasonable" worker from engaging in protected conduct is a legal question. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (deciding "material adversity" "as a matter of law"); *Aryain v. Wal-Mart Stores Tx. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (same); *Morales-Vallellanes v. Potter*,

605 F.3d 27, 33 (1st Cir. 2010) (same); *see also Burlington*, 548 U.S. at 68 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable."). Therefore, the ultimate "adverse action" question—*viz.*, whether the factual circumstances are such that Halliburton's actions well might dissuade an objectively reasonable employee in Menendez's shoes from engaging in protected conduct—involves the application of a legal standard, *Burlington* "material adversity," to the facts of the case. "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *See Pullman-Standard v. Swint*, 456 U.S. 273, 290 n.19 (1982).[6]

Here, contrary to Halliburton's suggestion, nowhere do we see in the opinion under review any indication that the Review Board rejected the Administrative Judge's factual findings. The Review Board stated that, "we do not so much reject the [Administrative Judge's] findings as view them from a different perspective." We take this to mean that the Review Board adopted the Administrative Judge's factual findings but came to a different conclusion as to the legal import of those facts, that is, whether Halliburton's disclosure of Menendez's identity in the surrounding circumstances amounted to a "materially adverse" action under *Burlington*. And it is obvious that the Review Board did not exceed its authority merely because it came to a different

---

[6] *Cf., e.g.*, *Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (whether a police officer's suspicion of criminal activity is "objectively reasonable" under the Fourth Amendment "is a mixed question of law and fact"); *Strickland v. Washington*, 466 U.S. 668, 698 (1984) (whether a criminal defense attorney's representation falls below an "objective standard of reasonableness" under the Sixth Amendment is a "mixed question[] of law and fact").

legal conclusion than did the Administrative Judge. *See Roadway Exp., Inc. v. Dole*, 929 F.2d 1060, 1066 (5th Cir. 1991). We reject Halliburton's argument that the Review Board exceeded its authority by impermissibly overriding the Administrative Judge's factual findings.

The question for us becomes whether the Review Board's ultimate conclusion that Halliburton's disclosure of Menendez's identity as the whistleblower amounts to a "materially adverse" action constitutes reversible legal error. We conclude that it does not. The undesirable consequences, from a whistleblower's perspective, of the whistleblower's supervisor telling the whistleblower's colleagues that he reported them to authorities for what are allegedly fraudulent practices, thus resulting in an official investigation, are obvious. It is inevitable that such a disclosure would result in ostracism, and, unsurprisingly, that is exactly what happened to Menendez following the disclosure. Furthermore, when it is the boss that identifies one of his employees as the whistleblower who has brought an official investigation upon the department, as happened here, the boss could be read as sending a warning, granting his implied imprimatur on differential treatment of the employee, or otherwise expressing a sort of discontent from on high. Moreover, in Menendez's workplace, collaboration with colleagues was valued. Menendez's supervisor scolded him for not collaborating with his colleagues enough and told him to be more of a "team player." In an environment where insufficient collaboration constitutes deficient performance, the employer's disclosure of the whistleblower's identity and thus targeted creation of an environment in which the whistleblower is ostracized is not merely a matter of social concern, but is, in effect, a potential deprivation of opportunities for future advancement.

We, like other courts that have addressed similar circumstances, agree with the Review Board's conclusion that, in a workplace environment such as Menendez's where collaboration is an important part of the job, the employer's targeted disclosure to the whistleblower's colleagues that the whistleblower had reported them to the authorities for alleged wrongdoing and has caused them to become the subject of an official investigation, thus creating an environment of ostracism, well might dissuade a reasonable employee from whistleblowing.  *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (supervisor's posting of employee's equal employment opportunity complaint to the office intranet, which the employee's colleagues could and did access, could "chill a reasonable employee from further protected activity"); *Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n*, 565 F.3d 508, 520 (8th Cir. 2009) (union's public posting of legal bills associated with employees' lawsuit could dissuade a reasonable employee from making a charge of discrimination); *Booth v. Pasco Cnty.*, 829 F. Supp. 2d 1180, 1201-02 (M.D. Fla. 2011) (union's public posting of announcement that named employees had sued it could dissuade a reasonable worker from making a charge of discrimination because "no one volunteers for the role of social pariah").

## B. *Contributing Factor*

To maintain an antiretaliation claim under SOX, the employee must prove that his protected conduct was a "contributing factor" in the employer's adverse action.  *Allen*, 514 F.3d at 476.  The Review Board found here that Menendez's whistleblowing was indeed a "contributing factor" in Halliburton's disclosure of his identity as the whistleblower.  (Given the facts of this case, it is difficult to see how a different outcome could have been possible.)  Halliburton contends that, as a matter of law, it is not enough that the protected conduct be a "contributing factor" in the employer's adverse action.

No. 13-60323

Rather, according to Halliburton, an employee must prove a "*wrongfully-motivated* causal connection." (Emphasis added.)  The principal problem with Halliburton's argument is that it conflicts with our statement in *Allen* that a "contributing factor" is "*any* factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Id.* at 476 n.3 (citation omitted, emphasis added).  Furthermore, the argument entirely lacks support in the case law.[7]  We are unaware of any court that has held that, in addition to proving that the employee's protected conduct was a "contributing factor" in the employer's adverse action, the employee must prove that the employer had a "wrongful motive" too.  On the contrary, the Federal Circuit has explained that "a whistleblower *need not* demonstrate the existence of a retaliatory motive on the part of the [employer] in order to establish that his [protected conduct] was a contributing factor to the personnel action." *Marano v. Dep't of Justice*, 2 F.3d 1137, 1141 (Fed. Cir. 1993).[8]  "Regardless of the official's motives, personnel actions against employees should quite simply not be based on protected activities such as whistleblowing." *Id.* (citation and alteration omitted).  We reject Halliburton's argument that the Review Board

[7] Halliburton cites *Lockheed Martin Corp. v. Administrative Review Board*, 717 F.3d 1121, 1136 (10th Cir. 2013), and *Harp v. Charter Communications, Inc.*, 558 F.3d 722, 727 (7th Cir. 2009), in support of its proposed "wrongful motive" rule.  Neither case, however, applied such a rule nor suggested in any way that such a rule ought to be applied.  In fact, the Tenth Circuit in *Lockheed Martin Corp.* described the "contributing factor" test as "broad and forgiving" and cited our *Allen* decision for the standard: "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." 717 F.3d at 1136 (citing *Allen*, 514 F.3d at 476 n.3).

[8] In *Marano*, the statute at issue was not the SOX antiretaliation provision but rather the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16.  That statute, however, contains the same "contributing factor" test as SOX, *i.e.*, "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." For *Allen*'s recitation of the "contributing factor" test under SOX, we cited to *Marano*. *See Allen*, 514 F.3d at 476 n.3 (citing *Marano*, 2 F.3d at 1140).

committed legal error by failing to require proof that the company had a "wrongful motive."

### C. *Damages*

The Review Board affirmed a damages award of $30,000 to Menendez for emotional distress and reputational harm.  Halliburton now contends that such "noneconomic compensatory damages" (*i.e.*, emotional distress and reputational harm) are not available under SOX.  The statute provides:

> (1)  In general.—An employee prevailing in [an antiretaliation action] shall be entitled to all relief necessary to make the employee whole.
>
> (2)  Compensatory damages.—Relief for any action under paragraph (1) shall include—
>
>> (A)  reinstatement with the same seniority status that the employee would have had, but for the discrimination;
>>
>> (B)  the amount of back pay, with interest; and
>>
>> (C)  compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

18 U.S.C. § 1514A(c).

As an initial matter, we read the word "include" in §1514A(c)(2) ("Relief for any action under paragraph (1) shall include . . .") to indicate that the three forms of relief listed as included (reinstatement, back pay, and certain "special damages") are non-exhaustive.  Put another way, we read the entitlement to "all relief necessary to make the employee whole" in §1514A(c)(1) to have a broader scope than the three enumerated forms of relief in §1514A(c)(2).  *See United States v. Canada*, 110 F.3d 260, 263 (5th Cir. 1997) (construing the word "includes" in another statute to "unambiguously indicate" a scope that is "inclusive" of the items listed but not "exclusive" of all others); *Project*

*Vote/Voting for Am. v. Long,* 682 F.3d 331, 337 (4th Cir. 2013) ("Courts have repeatedly indicated that 'shall include' is not equivalent to 'limited to.'"). If we were to hold otherwise, that is, to hold that SOX affords nothing beyond the three forms of relief enumerated in §1514A(c)(2), we would in effect be reading §1514A(c)(1) out of the statute, and we decline to do so. *See In re McBryde*, 120 F.3d 519, 525 (5th Cir. 1997) ("It is axiomatic that we must construe statutes so as to give meaning to all terms," and "we cannot accept" a construction that renders statutory text "mere surplusage."). In short, SOX affords "all relief necessary to make the employee whole" (§1514A(c)(1)), and such relief "shall include," *but is not limited to*, reinstatement, back pay, and certain "special damages" (§1514A(c)(2)). *See Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1138 (10th Cir. 2013) (concluding the same). The question then is whether noneconomic compensatory damages, *i.e.*, emotional distress and reputational harm, are included too.

Thus far, only one circuit court, the Tenth Circuit, has addressed whether SOX affords noneconomic compensatory damages, and that circuit answered in the affirmative. *See Lockheed Martin Corp.*, 717 F.3d at 1138. That opinion offers scarce reasoning though, so its conclusion is of limited persuasive value to us, but we are nevertheless hesitant to create a circuit split absent a persuasive justification.

Halliburton's argument that SOX does not allow noneconomic compensatory damages relies primarily on the analysis in *Murray v. TXU Corp.*, No. 3:03-CV-888, 2005 WL 1356444 (N.D. Tex. June 7, 2005). In *Murray*, the court compared the relevant SOX statutory language (that is, §1514A) to prior statutory language of Title VII. Before amendment in 1991 (*see* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071), Title VII provided the following relief:

> [T]he court may enjoin the respondent from engaging in [an] unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

*See Murray*, 2005 WL 1356444, at \*3 (quoting 42 U.S.C. § 2000e-5(g) (1991)). The courts construed such language to preclude noneconomic compensatory damages, including emotional distress and reputational harm. *See id.* (citing *United States v. Burke*, 504 U.S. 229, 238-39 (1992)); *see also Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988). The court in *Murray* concluded that, because SOX's language is similar to Title VII's pre-amendment language, the latter of which was construed to preclude noneconomic compensatory damages, it follows that this court should construe SOX to do the same. Halliburton urges us to adopt *Murray*'s reasoning.

We are not persuaded by Halliburton's argument because, contrary to *Murray*'s suggestion, the text of SOX plainly evinces a broader remedial scope than the text of pre-amendment Title VII. Under SOX, the employee "shall be entitled to all relief necessary to make the employee whole." 18 U.S.C. § 1514A(c)(1). By contrast, under the text of pre-amendment Title VII, the employee was not "entitled" to any relief, let alone "all relief necessary to make the employee whole." *Compare id.* (the employee "shall be entitled to all relief necessary to make the employee whole"), *with* 42 U.S.C. § 2000e-5(g) (1991) (the court "may enjoin the respondent" and order certain other relief "as may be appropriate"). And, while SOX plainly affords at least some damages, that is, legal relief, in addition to equitable remedies, pre-amendment Title VII afforded only equitable relief. *Compare* 18 U.S.C. §§ 1514A(b)(1)(B), (c)(2)(C) (stating that antiretaliation claims may be asserted in "an action at law or

equity" and that the employee's relief "shall include" "special damages"), *with* 42 U.S.C. § 2000e-5(g) (1991) (the court may "enjoin the respondent" and order certain "affirmative action" and other "appropriate" "equitable relief").[9]

The Secretary of Labor argues, and we agree, that SOX's language is more comparable to language in the False Claims Act's antiretaliation provision. The relevant language in the False Claims Act provides:

> (1) In general.—Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is [retaliated against].
>
> (2) Relief.—Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h). Both SOX's and the False Claims Act's antiretaliation remedial provisions state that employees "shall be entitled to all relief necessary to make [them] whole." Both statutes then provide that the relief available "shall include" reinstatement, back pay, and certain "special damages." The relevant statutory language is almost identical. *Compare* 18 U.S.C. § 1514A(c)(1), *with* 31 U.S.C. § 3730(h). And, as is relevant here, the circuit courts that have addressed the question have concluded that the False Claims Act affords noneconomic compensatory damages. *See Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999); *Brandon v. Anesthesia &*

---

[9] *See generally* Dan B. Dobbs, Law of Remedies § 1.2 (2d ed. 1993) ("The damages remedy was historically a legal remedy. The injunction and most other coercive remedies were equitable. . . . Although the courts of law and equity are merged almost everywhere, this dichotomy remains in the remedial language today.").

No. 13-60323

*Pain Mgmt. Associates, Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000). This would suggest that SOX does too.[10]

The Secretary of Labor also argues persuasively that, because the text of SOX's antiretaliation provision proscribes certain employer conduct, namely "threat[s] and "harass[ment]," *see* 18 U.S.C. § 1514A(a), that in the usual case will cause only noneconomic harm such as emotional distress, rather than economic harm, it would be anomalous to construe the statute to fail to afford a corresponding remedy for such. We agree. It would be an odd result, to say the least, to construe a statute that prohibits certain "threat[s]" and "harass[ment]" against employees and purports to afford "all relief necessary to make the employee[s] whole" to not offer a remedy for the most usual and predictable result of threats and harassment, emotional distress. *See* Dan B. Dobbs, <u>Law of Remedies</u> § 1.7 (2d ed. 1993) (stating that, because "remedies are means of carrying into effect the substantive right," "the remedy should reflect the right or the policy behind that right as precisely as possible").

Additionally, we take note of the common-law background to SOX's antiretaliation claim. At common law, many jurisdictions recognize torts for wrongful discharge of employment, which, in many cases, is essentially an antiretaliation claim analogous to the cause of action at issue here, and the courts in such jurisdictions allow recovery of noneconomic compensatory damages, emotional distress damages specifically, for such claims. *See, e.g.*, *Smith v. Atlas Off-Shore Boat Svc., Inc.*, 653 F.2d 1057 (5th Cir. 1981);

---

[10] *See also Rutherford v. Jones Lang LaSalle Am., Inc.*, No. 12-CV-14422, 2013 WL 4431269, at *3-4 (E.D. Mich. Jan. 29, 2013) (rejecting the analogy between SOX and pre-amendment Title VII, reasoning that SOX is more comparable to the False Claims Act).

*Merchant v. Am. S.S. Co.*, 860 F.2d 204 (6th Cir. 1988); *Hentzel v. Singer Co.*, 188 Cal. Rptr. 159 (Cal. Ct. App. 1982); *Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387 (S.D. Ind. 1982); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351 (Iowa 1989); *Chavez v. Manville Prods. Corp.*, 777 P.2d 371 (N.M. 1989); *Nees v. Hocks*, 536 P.2d 512 (Or. 1975); *Cagle v. Burns and Roe, Inc.*, 726 P.2d 434 (Wash. 1986); *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692 (W. Va. 1982). This court, for example, in *Smith v. Atlas Off-Shore Boat Service, Inc.*, recognized a maritime-law wrongful-discharge claim where an employee was terminated in retaliation for filing a personal-injury case against the employer, and we held that the employee was "entitled to recover compensatory damages for mental anguish that he may suffer as a result of the wrongful discharge." 653 F.2d at 1064. This common-law backdrop would tend to suggest that, when Congress created SOX's statutory antiretaliation right and specified that recovery thereunder includes "*all* relief necessary to make the employee whole" (emphasis added), it intended to encompass within the statute's broad ambit such damages as are often available at common law for analogous claims.

In light of SOX's plain text and the foregoing considerations, we find that the statute affords noneconomic compensatory damages, including emotional distress and reputational harm. SOX affords "*all* relief necessary to make the employee whole" (emphasis added), and we think Congress meant what it said. "All means all." *See Kennedy v. Lynd,* 306 F.2d 222, 230 (5th Cir. 1962). If an employee suffers emotional distress from actionable retaliation, then emotional damages are "necessary to make the employee whole." *See Hammond,* 218 F.3d at 892-93 ("Providing compensation for [emotional distress] comports with the statute's requirement that a whistleblowing employee 'be entitled to all relief necessary to make the employee whole.'"); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1199 (11th Cir. 2007)

("[E]motional damages, like other forms of compensatory damages, are designed to make the plaintiff whole."); *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 547 (6th Cir. 1999) ("This court has recognized that in making a plaintiff whole it often will be appropriate to award . . . damages for emotional harm."); *accord Tembenis v. Sec'y of Health & Human Servs.*, 733 F.3d 1190, 1193 (Fed. Cir. 2013).  The same is true for reputational harm and damages for such.  *See Dobbs-Weinstein*, 185 F.3d at 547; *Hanna v. WCI Communities, Inc.*, 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004); *Mahony v. KeySpan Corp.*, No. 04-CV-554, 2007 WL 805813, at \*7 (E.D.N.Y. Mar. 12, 2007).  Thus, under the statute's text, such noneconomic compensatory damages are available.

In sum, we agree with the Tenth Circuit that the plain language of SOX's text relating to remedies for retaliation affords noneconomic compensatory damages.  *See Lockheed Martin Corp.*, 717 F.3d at 1138.  This conclusion comports with the decisions of the Seventh and Eighth Circuits respecting essentially identical statutory text in the False Claims Act.  *See  Neal*,  191 F.3d at 832; *Brandon*, 277 F.3d at 944; *Hammond*, 218 F.3d at 893.  Halliburton has offered us no persuasive reason to differ from these decisions of three of our sister circuits, and we are unable to find any indication that Congress intended to exclude damages that SOX's plain text appears to allow.[11]

---

[11] Halliburton contends that, if noneconomic compensatory damages are available under SOX, and we conclude that they are, the Review Board nevertheless exceeded its authority here because it "failed to defer" to the Administrative Judge's factual findings and in fact disregarded them.  We disagree.  Nowhere in the Review Board's opinion do we see the disregard for the facts that Halliburton contends.  We do note, however, that the Administrative Judge and the Review Board followed an unusual procedure in this case in that the Administrative Judge issued alternative damages awards and the Review Board affirmed the one it found more appropriate.  But Halliburton's argument in this regard is so

No. 13-60323

## IV. CONCLUSION

Halliburton has failed to show that the Review Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. However, nothing in our decision today should be read as implying our agreement with all of the dicta in the Review Board's opinion.[12]

AFFIRMED.

---

terse, insubstantial, and lacking in citation to legal authority, we find that the issue has been waived and decline to address it.

[12] *See supra*, note 5. Additionally, Halliburton's brief dedicates substantial space to arguing that parts of the Review Board's opinion suggest that, under SOX's antiretaliation provision, company conduct is actionable regardless of whether it is "employment-related" or not. That, the company argues, is wrong because company conduct is actionable under SOX only if it affects a "term [or] condition of employment." *See* 18 U.S.C. § 1514A(a) (prohibiting public companies from "discharg[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner discriminat[ing] against an employee *in the terms and conditions of employment* because of [the employee's protected whistleblowing]") (emphasis added); *cf. Burlington*, 548 U.S. at 61-67 (addressing whether Title VII's antiretaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm"). We decline to address the argument because it is irrelevant to this case, in which everything that occurred was employment-related. Halliburton offers no argument for why the company's disclosure of Menendez's identity as the whistleblower and the resultant workplace ostracism should be construed as *not* affecting the "condition[s] of [Menendez's] employment." *See* 18 U.S.C. § 1514A(a). In essence, Halliburton asks us to issue an advisory opinion on the scope of SOX's prohibitions without regard to whether such issues are involved in the instant case, and we decline to do so.