# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3532

_____

Kelly Heim

*Plaintiff - Appellant*

v.

BNSF Railway Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 21, 2016
Filed: February 27, 2017

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Kelly Heim, a track worker for BNSF Railway Company ("BNSF"), was seriously injured when a rail rolled onto his foot. BNSF disciplined Heim for alleged violations of BNSF rules that led to this injury. Heim sued, claiming BNSF's discipline violated the employee-protections provision of the Federal Railroad Safety

Act ("FRSA"), 49 U.S.C. § 20109(a)(4).  The district court[1] granted summary judgment for BNSF, and we now affirm.

I.

On the day of his injury, Heim was working as part of a section gang near Douglas, Wyoming.  The section gang was responsible for replacing worn material underneath the rail.  This process, known as "rail seat abrasion," requires de-clipping and swinging the rail into the center of the track.  The loose rail, however, remains under tension, and there is a risk that it may roll or tip unpredictably.  During a morning safety briefing, the gang was allegedly warned of this risk and instructed to remain out of the "danger zone."  The danger zone is the area between the loose and fixed rail.  In this zone, the loose rail could move and pinch a worker against a fixed rail.  Loose rail tends to tip towards fixed rail, but can tip either way.  No BNSF rule directly prohibits employees from stepping into the danger zone, but general BNSF rules require employees to take precautions to avoid injury.

At the time of his injury, Heim was responsible for picking up "other track material" (*e.g.*, clips, spikes, and anchors).  BNSF workers pick up these materials because they may pose a tripping hazard or get "tamped into the ballast."  While performing this task, Heim noticed a stray rail clip in the danger zone.  According to Heim, the loose rail was sitting flat at the time and did not appear to be moving.  He looked both ways to locate the nearest on-track machines and, believing it was safe under the circumstances, stepped between the loose and fixed rails to retrieve the clip.  After Heim did so, the loose rail jumped onto his left foot, fracturing it.  The rail pinned Heim's foot to the ground, but the rail did not pinch him against the fixed rail—the "danger" typically associated with the danger zone.  Heim called out to his

_____

[1] The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

coworkers for help, and after the rail was finally removed from his foot 30 minutes later, Heim was transported to the hospital.

According to Heim, his immediate supervisor, Jim White, pressured him into filling out a formal personal injury report at the hospital. Heim did not want to fill out the form at the time because he had taken prescription pain medication. White, however, "insisted that it needed to be filled out right then and there." When Heim filled out the report and checked the box indicating that the injury was caused by the conduct of another person, White "coached" Heim to change his answer. Heim acquiesced, scratching out his original answer and indicating that the injury was not caused by another person. Heim also wrote that he could have prevented the injury by picking up the clip from the other side of the rail or leaving the clip until he could retrieve it later.

One week after Heim's injury, he received a notice of investigation from BNSF. The notice requested that Heim attend a hearing to determine "his responsibility, if any, in connection with [his] alleged failure to comply with instructions given at the morning briefing and failure to be alert & attentive when [he] placed his foot in harms [*sic*] way between the loose rail and fixed rail." At the hearing, Heim stated that he believed it was safe to step between the rail under the circumstances and that he could not have prevented the injury without also failing to perform his job that day (*i.e.*, remove debris from the track). A BNSF Division Engineer, Samuel Turnbull, reviewed the transcript from the hearing and determined that Heim violated BNSF rules requiring employees to be alert, attentive, and careful to prevent injury. As a result, Heim was given a Level S (Serious), 30-Day Record Suspension and a one-year probationary period. The effect of this discipline was that Heim faced a 30-day suspension without pay if he committed another rule violation during the one-year probationary period. Heim ultimately did not receive any time off without pay as a result of his Record Suspension.

Heim filed suit against BNSF, claiming that its discipline violated the FRSA. In his discovery deposition, Turnbull testified that he was "probably guilty" of stepping too close to the loose rail himself, and that "there probably isn't an engineering employee out on the track that at one point in time has not either stepped that close [to loose rail] or seen somebody do it." Turnbull, however, stated that he was not aware of any other employee in his "territory" who had been disciplined for stepping too close to loose rail. He also stated that he had never personally set up an investigation for such a violation. But, according to Turnbull, Heim's incident warranted discipline because it was a "pretty significant event" due to Heim's injury.

Additionally, Turnbull, White, and a BNSF corporate representative testified about a BNSF incentive compensation program. BNSF's corporate representative testified that 15% of the compensation program depended upon meeting or exceeding BNSF goals for reducing injuries reportable to the Federal Railroad Administration.[2] The representative further testified that this component of the compensation program is important to incentivize employees to have "processes, such as [a] safety action plan . . . that are going to reduce and eliminate injury, pain, and suffering." Turnbull testified that his bonus from the compensation program is based on the number of injuries reported company-wide, not the number of injuries reported under individual managers. He stated, "I could have zero [injuries] and the next guy could have 10 and it makes no difference, everybody is going to get the same. But at the local level you're also evaluated on your safety and it's not based off the number of injuries. It's based off of what you're doing to change behaviors, what you're doing to fix the environment[.]" Further, Turnbull and White both testified that they had been trained not to retaliate against employees for reporting injuries, and White testified that he has witnessed a coworker fired for such retaliation.

---

[2] Turnbull testified he was "pretty sure" Heim's injury was an injury reportable to the Federal Railroad Administration.

The parties filed cross-motions for summary judgment, and the district court granted judgment to BNSF. The district court reasoned that Heim was required to demonstrate that BNSF intentionally retaliated against Heim for reporting his injury. Further, the district court found that Heim failed to produce sufficient evidence of intentional retaliation. Heim now appeals.

## II.

"We review a district court's grant of a motion for summary judgment de novo, viewing all evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party." Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

Under the FRSA, "[a] railroad carrier . . . may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done . . . (4) to notify, or attempt to notify, the railroad carrier . . . of a work-related personal injury or work-related illness." 49 U.S.C. § 20109(a). To establish a prima facie case under this section, an employee must show "(i) he engaged in a protected activity; (ii) [the railroad carrier] knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action." Kuduk v. BNSF Ry. Co., 768 F.3d 786, 789 (8th Cir. 2014).

In the present case, Heim contends that he was disciplined for suffering an injury, not because he stepped near the loose rail. As evidence, he points to Turnbull's comments that others have not been disciplined for stepping near loose rail and that Heim's injury is what made his violation different. Thus, because Turnbull

-5-

would not have learned about the violation without the injury report and because there would have been no injury report without Heim's injury, Heim argues that his injury report is "inextricably intertwined" with his discipline. According to Heim, this factual connection, without more, is sufficient to establish the contributing-factor element of his prima facie case. See Ray v. Union Pac. R.R. Co., 971 F. Supp. 2d 869, 888 (S.D. Iowa 2013) ("Under these circumstances . . . , Plaintiff has demonstrated a genuine issue of material fact as to whether his protected activity was a contributing factor in his termination . . . because Plaintiff's report is *inextricably intertwined* with the adverse employment action." (emphasis added)).

But this Court has previously held that, under the FRSA's employee-protections provision, "the contributing factor . . . an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." Kuduk, 768 F.3d at 791. For the reasons set forth in our opinion issued today in Blackorby v. BNSF Railway Co., No.15-3192, slip op. at 8–10 (8th Cir. Feb. 27, 2017), we are bound to follow Kuduk. Heim therefore must demonstrate more than a mere factual connection between his injury report and his discipline in order to establish a prima facie case under the contributing-factor standard. Heim need not "conclusively demonstrate [BNSF's] retaliatory motive" to establish a prima facie case, but he must demonstrate that BNSF's discipline was, at least in part, intentional retaliation prompted by his injury report. See Kuduk, 768 F.3d at 791 (quoting Coppinger-Martin v. Solis, 627 F.3d 745, 750 (9th Cir. 2010)).

Viewing the evidence in the light most favorable to Heim, we conclude that no reasonable factfinder could conclude that Heim's supervisors intentionally retaliated against him for filing his injury report. To start, there is no dispute that White requested Heim submit a formal injury report. On the contrary, Heim contends that White *pressured* him to fill out the report. The remaining evidence, moreover, is insufficient to suggest that Turnbull intentionally retaliated against Heim. While the Kuduk court "acknowledge[d] that the more lenient 'contributing factor' standard will

increase to some extent the probative value of temporal proximity," it also "reject[ed] the notion . . . that temporal proximity, without more, is sufficient to establish a prima facie case" under the FRSA. Id. at 792. We conclude that BNSF's compensation program is insufficient, by itself, to provide the "more" necessary for Heim's claim to survive summary judgment; the record demonstrates that bonus calculations are based on a company-wide reduction of reportable injuries and not based on reportable injuries under individual managers like Turnbull. And Turnbull's alleged admission that the rules were selectively enforced against Heim is likewise insufficient. Although Turnbull admitted that most employees have probably stepped too close to loose rail and were not disciplined, we agree with the district court that, unless they were injured like Heim, their violations most likely "would have gone unnoticed." Therefore, without more specific evidence of an improper retaliatory motive, we find that Heim failed to establish his prima facie case.

III.

The judgment of the district court is affirmed.

_____