# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 17-1167

———————————————

Dustin D. Hess

*Plaintiff - Appellant*

v.

Union Pacific Railroad Company, A Delaware Corporation

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

——————————

Submitted: June 14, 2018
Filed: August 6, 2018

——————————

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

Dustin D. Hess ("Hess"), appeals from a grant of summary judgment by the district court[1] in favor of Union Pacific Railroad, a Delaware Corporation ("Union Pacific"). Hess claims that he was terminated for engaging in a protected activity.

———————————

[1] The Honorable John A. Jarvey, Chief United States District Judge for the Southern District of Iowa.

Union Pacific countered, and the district court agreed, that he was terminated for violating the railroad company's absenteeism policy. We affirm.

## I.	FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Assuming the facts in a light most favorable to the non-moving party, Hess was originally hired as a brakeman for Union Pacific in 2004 and promoted to conductor in January 2005. He suffered a workplace injury on May 17, 2006, and filed a suit against Union Pacific under the Federal Employers Liability Act ("FELA"). The case settled in April 2011. The settlement recognized that Hess continued to suffer the effects of his injuries and allowed him to "mark off intermittently for his neck" so long as he provided "appropriate medical documentation to justify the time off, as requested by the Company." A major area of dispute between the parties is whether the settlement agreement, which required Union Pacific to accommodate Hess's need for time off to obtain medical treatment on his neck, excused Hess from continuing to comply with Union Pacific's general attendance policy that required him to notify and provide medical documentation to his supervisor before missing a shift.

On September 7, 2011, while traveling to Boone for a work-related test, Hess's car was involved in a collision with another vehicle. He was injured and required hospitalization. The parties dispute whether the accident aggravated Hess's previous injuries or resulted in new injuries. In order to submit his claim with the other driver's insurance carrier, Hess needed to produce payroll documents. He asserts that it was unlawful harassment for Union Pacific to charge him 75 dollars for copies of the records. Hess explains the Union Pacific action as a retaliatory impediment because a manager responded to his request for copies by stating "since you are being a smart-ass, it is being put on the bottom of the stack and we will see when we get to it."

Union Pacific's graduated attendance policy contains the following language:

> As a Union Pacific employee, you were hired for and are expected to protect your job assignment on a full-time basis. "Full-time" means being available to work your assignment, whether regular or extra, whenever it is scheduled to work. Assigned rest days, layover days, and agreement-provided compensated days off are available to you for personal business. In addition, reasonable personal lay-offs may be granted if the needs of service permit.
>
> It is your responsibility to notify your manager, in advance of layoffs if possible, on personal or family issues that may affect your ability to work full time. Substantiating documentation is expected and may be required. However, notification and documentation alone do not excuse your responsibility to protect your job. You may be considered in violation of this policy regardless of the explanation offered if you are unable to work full time and protect all employment obligations.

A first unexcused absence counts as a First Offense under the policy. A second unexcused absence counts as a Second Offense. Discipline for the first two offenses is limited to written notice advising the employee that he or she has violated the absenteeism policy. A Third Offense will result in permanent dismissal.

Union Pacific terminated Hess's employment on January 16, 2012, for excessive absenteeism and failure to provide timely medical documentation. As the district court explained:

> A First or Second Offense remains on an employee's record for 36 months. If there are no new offenses during this 36-month period, the employee's attendance record is returned to a clean slate. For example, Plaintiff was assessed a First Offense for absenteeism on November 29, 2006. He had no violations in the following 36 months. Thus, when in July 2010 he was charged again for absenteeism, this only counted as a First Offense. When he was allegedly excessively absent

again, he received a Second Offense on November 12, 2010. Finally, when Plaintiff was allegedly excessively absent between September 6, 2011 to December 4, 2011, he was charged with a Third Offense. A subsequent formal investigation concluded that the absences were unexcused because he failed to notify his manager before taking time off.

On October 5, 2012, the Public Law Board ("PLB") granted Hess's request for removal of his disciplinary entry for his alleged Second Offense of the absentee policy, finding that Union Pacific did not meet its burden of proof and that "[t]he record showed that the claimant marked off for medical appointments and that the claimant attempted to reach [Union Pacific] officers prior to marking off." On June 7, 2013, another PLB granted removal of Union Pacific's Third Offense disciplinary action, finding that a "reasonable man would easily see the nexus between" the two accidents and that the automobile collision aggravated the work-related injury.

After the first PLB order, on October 24, 2012, Union Pacific reinstated Hess, informing him by letter. The railroad required Hess to recertify his qualifications prior to resuming full conductor duties. His first opportunity to work was January 7, 2013. He was put on a training board until January 31, 2013. Even though he admits he was informed of his reinstatement, Hess claims he was never properly reinstated because he was never paid his lost wages and his lost benefits were not restored. On March 1, 2013, Hess talked to the company's assistant director of labor relations, James Boyle, to discuss his lost wages and benefits. Boyle told Hess the problem would be resolved the next day. On March 2, 2013, Hess called a railroad employee to discuss the restoration of benefits. When he was told his benefits had not yet been restored, Hess asked to be put on "Leave/Quit" status. Union Pacific never called him to work after that. Hess never called management to discuss his resignation and only returned to the company to surrender company equipment. He now contends he never quit but merely vented out of frustration because Union Pacific was dragging its feet to get his back pay and benefits reimbursed.

-4-

On June 4, 2012, Hess filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging retaliation in violation of 49 U.S.C. § 20109 of the Federal Railway Safety Act ("FRSA"). On September 13, 2013, OSHA dismissed the complaint. Although OSHA found that Hess engaged in a protected activity by filing an on-the-job injury report and that he had suffered an adverse action by being terminated, OSHA found that Hess failed to establish a *prima facie* case of retaliation. According to the OSHA order: "A preponderance of the evidence indicates that Complainant's protected activity was not a contributing factor in the adverse action. Respondent put forth and established a legitimate, non-retaliatory reason for its decision to issue Complainant a permanent dismissal. The evidence shows that Complainant received a permanent dismissal for violating Respondent's attendance policy." The OSHA order further provided, "Complainant has 30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ)." The dismissal was scheduled to be heard by an ALJ on October 21, 2014. Prior to the scheduled hearing, the ALJ dismissed the OSHA complaint after receiving a copy of Hess's district court complaint.

Hess filed his complaint in district court on August 8, 2014, alleging retaliation for reporting a work-related injury under 29 U.S.C. § 20109(a)(4). He points out that the "FRSA also prohibits a railroad from denying, delaying, or interfering with the medical treatment of an injured employee and from disciplining or threatening discipline to an employee for requesting medical or first aid treatment or for following the orders or treatment plan of a treating physician." Union Pacific moved for summary judgment, claiming that Hess failed to prove a *prima facie* claim of retaliation; he raised claims in the complaint that were not raised in the OSHA complaint and are now time-barred; he failed to exhaust his administrative remedies; he cannot collect lost wages; and his claim for punitive damages fails as a matter of law. The district court granted summary judgment, finding that Hess "cannot establish a prima facie case of retaliation for his FRSA Section(a)(4) claim." The

-5-

district court did not reach the issues of affirmative defense, administrative exhaustion, or punitive damages.

## II.    DISCUSSION

"We review a district court's grant of a motion for summary judgment de novo, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party." Loos v. BNSF Railway Co., 865 F.3d 1106, 1112 (8th Cir. 2017) (quoting Heim v. BNSF Railway Co., 849 F.3d 723, 726 (8th Cir. 2017)).  "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Heim, 849 F.3d at 726 (quoting Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016)) (internal quotation marks omitted); Fed. R. Civ. P. 56(a).  Once the movant fulfills its responsibility of informing the court of the basis for its motion, identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact," the "nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).  "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. (citing Matsushita Elec. Indus.  Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### A.    Hess's Claim of Retaliation for Reporting a Work-related Injury

Hess claims that he was unlawfully terminated on January 16, 2012, in retaliation for "having an on-the-job injury, reporting it, pursuing a lawsuit, and then returning to work following the settlement of his lawsuit."  The FRSA provides:

-6-

A railroad carrier engaged in interstate or foreign commerce, . . . or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done– . . . to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee.

49 U.S.C. § 20109(a)(4). "[A]n employee may obtain *de novo* review of a retaliation claim in federal court after exhausting administrative remedies." Kuduk v. BNSF Railway Co., 768 F.3d 786, 788 (8th Cir. 2014). We analyze claims in two steps. Loos, 865 F.3d at 1112. "First, the plaintiff must make a *prima facie* case." Id. (citing Kuduk, 768 F.3d at 789). If the plaintiff establishes a *prima facie* case, "the railroad has the opportunity to demonstrate by clear and convincing evidence that it would have discharged the employee even if he had not engaged in protected activity." Id. (citation omitted).

In order for Hess to establish a *prima facie* case, he must show "(i) he engaged in a protected activity; (ii) [Union Pacific] knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action." Heim, 849 F.3d at 726-27 (quoting Kuduk, 768 F.3d at 789) (internal quotation marks omitted). Union Pacific does not dispute that the first three elements of Hess's *prima facie* case were established: Hess suffered a work-related injury; Union Pacific knew about the injury; and Hess suffered an adverse employment action. The sole issue is whether Hess has provided sufficient facts to "raise an inference that the protected activity was a contributing factor" in the adverse-employment decision.

-7-

"[A] contributing factor is 'any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" Kuduk, 768 F.3d at 791 (quoting Procedures for the Handling of Retaliation Complaints under the Federal Railroad Safety Act, 75 Fed. Reg. at 53,524).

> To determine whether the circumstances raise an inference of retaliatory motive in the absence of direct evidence, we consider circumstantial evidence such as the temporal proximity between the protected activity and the adverse action, indications of pretext such as inconsistent application of policies and shifting explanations, antagonism or hostility toward protected activity, the relation between the discipline and the protected activity, and the presence of intervening events that independently justify discharge.

Loos, 865 F.3d at 1112-13 (citing DeFrancesco v. Union R.R. Co., ARB No. 10-114, 2012 WL 5, at *3 (U.S. Dep't of Labor Feb. 29, 2012)). We also consider evidence of the employer's nonretaliatory reasons for the adverse action. Loos, 865 F.3d at 1113 (citing Gunderson v. BNSF Railway Co., 850 F.3d 962, 969 (8th Cir. 2017)).

Hess argues that he was discharged in January 2012 for reporting a workplace injury in May 2006. In the intervening six years, Hess had been investigated several times for unapproved absenteeism. There is significant evidence, both prior to the workplace accident and in the six years following, that Hess failed to follow Union Pacific's policy and "protect" his "job assignment on a full-time basis." After his last reinstatement, Hess failed to report for work at all and instead asked to be put on "Leave/Quit" status. Viewing the evidence in a light most favorable to Hess, a reasonable jury could not find that retaliation for Hess's reporting of his workplace injury was a contributing factor to his separation from employment with Union Pacific. Hess's employment ended because of his absenteeism and his inability (or unwillingness) to complete the steps necessary for reinstatement. His allegations of discriminatory treatment following his car accident are no assistance to him. See

BNSF Railway Co. v. United States Dep't of Labor, 867 F.3d 942, 946 (8th Cir. 2017) ("Absent sufficient evidence of intentional retaliation, a showing that protected activity initiated a series of events leading to an adverse action does not satisfy the FRSA's contributing factor causation standard."); Kuduk, 768 F.3d at 791 ("[T]he contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity."). Put in its simplest terms, Hess told his employer he quit and he never came back. Hess failed to establish by a preponderance of the evidence that he suffered an adverse employment action because he reported his workplace injury.

We also note Union Pacific's substantial evidence of Hess's noncompliance with its absentee policy and his lack of cooperation with reinstatement efforts. Not only is this evidence important in the "contributing factor" analysis, but it also supports the district court's conclusion that any adverse employment actions were based on legitimate, nondiscriminatory reasons.

## B.     Hess's Argument that He had a Claim for Retaliation for Seeking Medical Treatment

In its order granting summary judgment, the district court addressed Hess's contention that he sufficiently stated a claim under 49 U.S.C. § 20109(c) for retaliation for treating his workplace injury. The district court concluded that no such claim was apparent in the complaint, stating:

> Although Plaintiff recites the language of FRSA Section (c), he never alleges that Defendant terminated his employment for treating his workplace injury. When describing the alleged retaliation, Plaintiff states that Defendant terminated his employment,
> 
>     a.    "To *retaliate* against him for previously having an on-the-job injury, reporting it, pursuing a lawsuit, and then returning to work following the settlement of his lawsuit."

. . . The Complaint goes on to assert that the termination constituted discrimination as retaliation "for engag[ing] in the protected activity of *notifying* the railroad carrier of a work-related personal injury." . . . The Complaint even goes on to explicitly state that there is "no possible reason for the adverse actions of [Defendant] against [Plaintiff] . . . other than retaliation against him for reporting a personal injury." Nowhere in the Complaint does it state Defendant terminated his employment for treating his workplace injury. There is simply no basis for concluding that the Complaint contains an FRSA Section (c) claim upon which relief can be granted.

(alterations in original).

While addressing Hess's allegations of Union Pacific's hostility toward him, the district court concluded: "These allegations, when construed . . . in a light most favorable to the Plaintiff, are not enough for a jury to infer a retaliatory motive to Defendant. Most of the alleged actions were undisputedly routine actions or isolated events, and do not establish that Defendant treated him differently than any other employee. Plaintiff cannot establish a prima facie case of FRSA retaliation." The court added a footnote, stating that even if Hess had sufficiently stated a claim under section (c), "it would fail for the same reason." Hess did not provide proof by a preponderance of the evidence that his separation from employment with Union Pacific was the result of retaliation for his seeking medical treatment.

## III. CONCLUSION

We affirm the judgment of the district court.

_____