# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2021

Lyle W. Cayce
Clerk

No. 20-60274

Jeff Yowell,

*Petitioner*,

*versus*

Administrative Review Board, United States
Department of Labor,

*Respondent*,

Fort Worth & Western Railroad Company,

*Intervenor*.

On Petition for Review of a Final Decision and Order of the
United States Department of Labor's Administrative Review Board
ARB Case No. 2019-39

Before Jolly, Southwick, and Costa, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

A railroad employee has petitioned for review of a decision by the
Department of Labor's Administrative Review Board ("ARB") that upheld
his discharge. The petitioner argues that he was improperly terminated for
reporting a job-related injury, an act that the Federal Railroad Safety Act

No. 20-60274

("FRSA") protects. We hold, instead, that the ARB did not err in finding that the railroad terminated the petitioner's employment for failing to comply with his obligation to report promptly all known injuries and that his eventual acknowledgement of the injury was not a "contributing factor" for purposes of the FRSA. The petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

The railroad employee, Jeff Yowell, challenges only the ARB's legal conclusions. Because there is no dispute about the facts, we summarize them as stated in the ARB's decision.

Yowell began working for Fort Worth & Western Railroad Company ("FWWR") in May 2017. FWWR had a workplace-injury policy that required reporting an injury "immediately, no matter how small," to the supervisor. The purposes of this policy were to further employee safety and allow the railroad to investigate the site of any injury immediately.

At 11:00 p.m. on August 28, 2017, Yowell began his night shift. Early the following morning, he reported that he had injured his knee during that shift. He met with company representatives that same morning to identify the cause of his injury and to determine whether he required medical treatment. Yowell's recounting of the events was inconsistent in detailing both how he injured himself and where the injury occurred. Chance Gibson, the initial representative to speak with Yowell, had doubts about the accuracy of Yowell's explanation and asked Yowell to write out a statement.

At that point, Chief Transportation Officer Jared Steinkamp arrived. Steinkamp learned of the inconsistencies that Yowell had provided and sought to uncover the origin of Yowell's injury. Yowell eventually admitted that he had injured his knee sometime the prior week but had failed to report

it.  That injury resulted in swelling and Yowell's need to wear a brace, yet Yowell chose not to disclose his injury to the company for more than a week. Yowell wrote out two statements that identified the injury from the previous week as the reason for his current pain.  Yowell does not dispute that he had all along been aware of an injury.  Yowell received medical treatment for this injury.

Because Yowell had violated company policy by failing to report the knee injury immediately, Gibson recommended Yowell's employment be terminated.  After further discussions with FWWR's CEO and human-resources department, Steinkamp terminated Yowell's employment on September 13, 2017.

Yowell first sought review of his employment termination through the Occupational Safety and Health Administration, which found that his employment termination did not violate the FRSA.  Yowell objected to that finding and requested a hearing before an administrative law judge ("ALJ"). A hearing occurred in April 2018.  The ALJ concluded that Yowell's employment termination violated the FRSA, and it ordered reinstatement, backpay, and other relief. FWWR sought further review, and the ARB reversed the ALJ's decision.  The ARB held there had been no violation of the FRSA.  Yowell petitioned this court for review.  His arguments criticize the causation standard that the ARB applied to his case.

## DISCUSSION

The Administrative Procedure Act governs our review of this case. *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 258 (5th Cir. 2014).  The Act requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  We review

the agency's conclusions of law *de novo*. *Halliburton*, 771 F.3d at 258. An agency's factual findings are reviewed to determine if they are supported by substantial evidence. *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 475–76 (5th Cir. 2004). "Under the substantial evidence standard, the ARB's decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion as the ARB." *Id.* at 476 (citing *Asarco, Inc. v. NLRB*, 86 F.3d 1401, 1406 (5th Cir. 1996)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).

Yowell divides the issues for our review in a manner that we will not follow precisely, but we will address all his arguments in the following order. First, we discuss the statutory requirements needed to prevail in a FRSA action. Then, we explain what satisfies the contributing-factor standard. Finally, we apply that standard to Yowell's case.

## I.     *Requirements for proving retaliation under the FRSA*

The FRSA focuses on promoting safety in the railroad industry. 49 U.S.C. § 20101. Congress later amended the Act to create stronger protections for employees who engage in whistleblower activities. *See* Pub. L. No. 110–53, § 1521, 121 Stat. 266 (2007). One such protection prevents railroad carriers from discriminating or retaliating against an employee who engages in a protected activity. 49 U.S.C. § 20109. Railroad carriers "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done." § 20109(a).

The statute lists seven protected activities. § 20109(a)(1)–(7). One of the enumerated activities is central in this case, that of "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal

injury." § 20109(a)(4).  Two more subsections of the employee-protection provision guard against retaliation for actions related to safety or security conditions or for seeking and receiving medical attention.  § 20109(b), (c).

An action brought to enforce these protections "shall be governed by the legal burdens of proof set forth in section 42121(b)." § 20109(d)(2)(A)(i). We have described the burden shifting of that statute to require an employee first to establish by a preponderance of the evidence that: (1) he had been involved in a protected activity; (2) the employer was aware that the employee had been involved in such an activity; (3) the employee was subjected to an unfavorable personnel action; and (4) the protected activity was a "contributing factor" in that unfavorable personnel action.  *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008); *see* § 42121(b)(2)(B)(i).[1]

Secondly, if an employee establishes a *prima facie* case, the burden shifts to the employer to prove the same-action defense. § 42121(b)(2)(B)(iv).  Under the same-action defense, a railroad carrier has the opportunity to "demonstrate[] by clear and convincing evidence that [it] would have taken the same unfavorable personnel action in the absence of that behavior."  *Id.*  The employee cannot obtain relief if the employer succeeds in establishing the same-action defense.  *Id.*

The parties here do not dispute that Yowell engaged in the protected activity of reporting an injury,[2] that FWWR was aware of such activity, and

---

[1] We have likened the burden shifting under this statute to that of the *McDonnell Douglas* framework.  *Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 566–67 (5th Cir. 2011).  We have also commented, though, that the two frameworks are "distinct." *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 476 (5th Cir. 2008).  In our view, one of these opinions emphasized the similarities, while the other acknowledged the differences.

[2] FWWR argued to the ALJ and the ARB that Yowell did not engage in a protected activity because his report of an injury was not made in good faith, but both rejected that

that FWWR terminated Yowell's employment.  The only dispute is whether Yowell's protected activity was a contributing factor in the unfavorable personnel action.

## II.     *The contributing-factor standard*

We have previously defined "contributing factor" as "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the [employer's] decision."  *Allen*, 514 F.3d at 475 n.3 (citation omitted).  Our review today of the contributing-factor standard includes a summary of the relatively recent change in the ARB's interpretation of that standard.

The fundamental disagreement between the parties is how to evaluate a factual scenario in which an employee's protected act itself reveals, or at least leads to the discovery of, conduct for which discipline is otherwise appropriate.  The facts of this case, unsurprisingly, provide an archetype of such a scenario: Was Yowell's protected act of reporting a workplace injury a contributing factor to Yowell's being disciplined for failing to comply with the obligation to report injuries promptly?  FWWR maintains that the discipline was for misconduct that is distinct from the protected act.  Yowell argues that the two were intertwined and that the railroad violated the FRSA.

The Department of Labor ("DOL"), which defends the ARB decision to this court, argues a proximate-cause standard is implied in the FRSA.  The DOL contends that "an employee should not be able to shield himself from discipline for his own workplace misconduct merely by reporting it to the carrier himself."  FWWR similarly argues: "If the protected activity merely begins a chain of events which leads to the employee being disciplined, that

---

contention.  We do not interpret FWWR's briefing to this court as continuing to dispute that Yowell's report of the injury constitutes a protected activity.

No. 20-60274

is insufficient to establish retaliation due to the protected activity, as required by the FRSA." Yowell responds that the ARB's standard creates a heightened burden on FRSA claimants that is incongruent with the FRSA's plain text and its policy goals.

The ALJ's opinion in this case (which the ARB overturned) stated that the necessary linking of the protected activity and the adverse action can be achieved by showing the two are "inextricably intertwined":

> Protected activity and employment actions are inextricably intertwined when protected activity "directly leads to the [unfavorable] employment action in question, or the employment action cannot be explained without discussing the protected activity." *Benjamin v. Citationshares Mgmt., LLC*, ARB No. 12-029, ALJ No. 2010-AIR-001, slip op. at 12 (ARB Nov. 5, 2013); *DeFrancesco v. Union R.R. Co.*, ARB No. 10-114, ALJ No. 2009-FRS-009, slip op. at [7] (ARB Feb. 29, 2012) (finding the complainant's suspension was directly intertwined with his protected activity because had the complainant not reported his injury, the respondent would not have conducted an investigation that resulted in his discipline)[several additional cited ARB decisions are deleted].

In its February 2020 decision in this case, the ARB explained that a few months after the ALJ's decision, the ARB abandoned the standards of chain of events and inextricably intertwined events:

> As we explained in *Thorstenson*, the ARB no longer requires that ALJs apply the "inextricably intertwined" or "chain of events" analysis. *Thorstenson v. BNSF Ry. Co.*, ARB Nos. 18-059, -060, ALJ No. 2015-FRS-052, slip op. at 10 (ARB Nov. 25, 2019) ("We note that the plain language of the statute does not include the term 'inextricably intertwined.' Rather, this is a construction that substitutes for, and in some cases circumvents, the ALJ's contributing factor or affirmative defense analyses."). ["]By placing the focus on how the

employer came to learn of the employee's wrongdoing rather than the employer's actions based on that wrongdoing or protected activity, [']chain of events['] causation departs from the statute's [']contributing factor['] text.["] *Id.* at 10.

On review of the ARB's *Thorstenson* decision, the Ninth Circuit rejected the ARB's articulation of a new approach; it did so in an opinion that is not precedential, even in that circuit. *Thorstenson v. U.S. Dep't of Lab.*, 831 F. App'x 842, 843 (9th Cir. 2020). As far as we have discovered, the Ninth Circuit is the only one to disagree with the ARB's current interpretation of contributing factor in situations such as those in the present case, namely, that the protected act was what revealed the separate misconduct for which the employee was disciplined. That Ninth Circuit panel held that the ARB had improperly begun requiring proof that the protected activity was the proximate cause of the adverse action, a standard that was inconsistent with the Ninth Circuit's FRSA caselaw. *Id.* The DOL in this appeal argues that a proximate-cause limitation in some form is implicit in the FRSA, but it acknowledges that there is no all-purpose definition of such causation. We will discuss proximate cause later. We at least observe now that the Ninth Circuit's reasoning is arguably inconsistent with several opinions from other circuit courts that we will soon discuss.

The DOL and FWWR argue that not only is it improper to examine how intertwined the relevant events were, but it is incorrect to apply a standard that examines whether the adverse action was part of a chain of events that also included the protected activity. Such causation examines whether a protected activity set in motion succeeding events that resulted in the adverse personnel action. We see no particular distinction between these two standards. The ARB's decision here disclaimed further reliance on either a chain or an intertwining of events, as it is irrelevant "how the employer came to learn of the employee's wrongdoing."

A significant part of the ARB's explanation in this case of "contributing factor" is the following that appeared in one paragraph of its opinion. The ARB first stated that a contributing factor is "any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision," citing *Rookaird v. BNSF Railway Co.*, 908 F.3d 451, 461–62 (9th Cir. 2018), which quoted *Gunderson v. BNSF Railway Co.*, 850 F.3d 962, 969 (8th Cir. 2017). The ARB then made this key point: "[T]he contributing factor that an employee must prove is *intentional* retaliation prompted by the employee engaging in protected activity," quoting *Kuduk v. BNSF Railway Co.*, 768 F.3d 786, 791 (8th Cir. 2014) (emphasis added). Despite these statements, the ARB then immediately explained that "a complainant need not prove a retaliatory motive beyond showing that the employee's protected activity was a contributing factor in the adverse action," quoting *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013).[3] Despite describing the legal principles in this way, the ARB did not return to the issue of intent when setting out its analysis of the facts.

The ARB was distinguishing between an employer's intentional retaliation "prompted" by protected activity and an employer's motive to retaliate. To understand what that distinction could be, we examined the cited Third Circuit *Araujo* opinion and then the authorities *Araujo* relied upon. We find no such distinction. What we find in *Araujo* was that an employee in his or her *prima facie* case under the FRSA need not present evidence of the employer's "retaliatory motive"; when the burden shifts to the employer, though, it can avoid liability by showing it would have taken

---

[3] The ARB used the identical analysis and authorities that we just summarized in its earlier *Thorstenson* decision. *Thorstenson v. BNSF Ry. Co.*, ARB Nos. 18-059, -060, ALJ No. 2015-FRS-052, 2019 WL 11901996, at *5 (ARB Nov. 25, 2019).

the same action even without the employee's protected activity. *Id.* at 158–59 (citing *Marano v. Dep't of Just.*, 2 F.3d 1137, 1140–41 (Fed. Cir. 1993)).[4] Whatever the ARB identified as the difference between a retaliatory motive and intentional retaliation is not readily apparent to us.

We now examine whether the ARB's analysis in this case can be upheld under our review standard. The language of the statute is a good place for us to begin. The FRSA prohibits retaliation that is "due, in whole or in part," to the employee's engaging in a protected activity. 49 U.S.C. § 20109(a). The Supreme Court has interpreted similar language as creating liability if the employee's action causes "even the slightest" influence on the employer's decision. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692, 695–99 (2011) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500 (1957)).

Even such a broad interpretation, though, has its limits. *CSX* dealt with a different federal statute involving railroad workers, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq. CSX Transp.*, 564 U.S. at 688. The Supreme Court reviewed whether importing a proximate-cause standard into that statutory framework was appropriate. *Id.* The Court said that "'proximate cause' is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability." *Id.* at 692. Acknowledging that the meaning of the term varies, and many of the definitions are confusing, the Court held that common sense imposes some

---

[4] The *Marano* case was interpreting the Whistleblower Protection Act that said "corrective action" in favor of an employee was to be ordered when the employee's whistleblowing "was a contributing factor in the personnel action which was taken . . . against such employee." 5 U.S.C. § 1221(e)(1); *Marano*, 2 F.3d at 1140 (alteration in original). The *Marano* opinion quoted a Senate Report on the whistleblower legislation: "Regardless of the official's motives, personnel actions against employees should quite [simply] not be based on protected activities such as whistleblowing." *Marano*, 2 F.3d at 1141 (alteration in original) (quoting S. Rep. No. 413, 100th Cong., 2d Sess. 16 (1988) (accompanying S. Rep. No. 508)).

limits on the FELA's coverage of a worker's "injury or death resulting in whole or in part from [the employing railroad's] negligence." *Id.* at 703 (quoting 45 U.S.C. § 51). Dissenters thought the *CSX* majority imposed too few limits on causation under the FELA. *CSX Transp.*, 564 U.S. at 705–06 (Roberts, C.J., dissenting) (concluding that the majority's test amounts to but-for causation). Our use of *CSX* is not to borrow its definitions but only to support that limits on causation are inherent in statutes such as the FRSA.

Here, we have even more than the common-sense limitation inherently present in the FELA. The burden-shifting framework refines our understanding of the "in whole or in part" language because the protected activity must be a contributing factor to the adverse personnel action. 49 U.S.C. § 20109(d)(2)(A)(i); § 42121(b)(2)(B)(i). "Contributing" requires some degree of causation, though importing a traditional definition of "proximate cause" is not helpful.

We examine other circuit courts of appeals' decisions to identify where to draw this line. The Eighth Circuit has rejected the relevance of inextricably intertwined events to show a contributing factor. *See, e.g.*, *Neylon v. BNSF Ry. Co.*, 968 F.3d 724, 729–30 (8th Cir. 2020).[5] Under that circuit's interpretation, "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." *Kuduk*, 768 F.3d at 791. In the Eighth Circuit, it is this requirement that the employer have intentionally retaliated due to the employee's protected act that makes the factual intertwining of events insufficient for contributing-factor purposes. *Heim v. BNSF Ry. Co.*, 849

---

[5] *Neylon* cited a line of Eighth Circuit cases that rejected the inextricably intertwined standard: *Dakota, Minnesota & Eastern Railroad Corp. v. U.S. Department of Labor Administrative Review Board*, 948 F.3d 940, 946 (8th Cir. 2020), and *Heim v. BNSF Railway Co.*, 849 F.3d 723, 727 (8th Cir. 2017).

F.3d 723, 727 (8th Cir. 2017).  We already discussed that in this case, the ARB relied on the Eighth Circuit's *Kuduk* opinion to state that an employee must prove intentional retaliation.  The Fifth Circuit, though, has not yet decided whether a FRSA claimant must prove intentional retaliation as part of a *prima facie* case.  *See Epple v. BNSF Ry. Co.*, 785 F. App'x 219, 222–23 (5th Cir. 2019).  The DOL's briefing in defense of the ARB decision in this case does not rely on an absence of evidence of intent.  We conclude that we need not decide whether intent is an element.

The Seventh Circuit also requires more than a chain of events to demonstrate a contributing factor.  *See, e.g.*, *Holloway v. Soo Line R.R. Co.*, 916 F.3d 641, 644 (7th Cir. 2019); *Koziara v. BNSF Ry. Co.*, 840 F.3d 873, 877 (7th Cir. 2016).  In that circuit, "a plaintiff alleging retaliation in violation of § 20109(a)(4) cannot point only to the sequence of events — an injury report followed by a later dismissal — to show that the complaint was a contributing factor in the adverse employment action."  *Holloway*, 916 F.3d at 644.  At least some of that circuit's precedents are explicit that "the 'contributing factor' standard is lower than those applied in other anti-discrimination contexts," but it is still necessary to show the employer acted with improper motive.  *Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 382 (7th Cir. 2018).  Thus, like the Eighth Circuit, it appears the Seventh Circuit's requirement of more than a mere chain or intertwining of events depends in part on the need to prove an employer's intent.

The Sixth Circuit has insisted that some greater degree of causation is required, and not just proof of a chain of events.  *Lemon v. Norfolk S. Ry. Co.*, 958 F.3d 417, 420 (6th Cir. 2020).  That court considered an employee's argument that "without the injury report, he would not have lied to his supervisor about speaking to others and, without that falsehood and others discovered later, he would not have been fired."  *Id.*  The *Lemon* court rejected this argument, saying that such a view of the contributing-factor

standard "eliminates causation from the liability inquiry." *Id.* One way to interpret the *Lemon* opinion is that the court was deciding it did not need to plumb the depths of meaning within the term "contributing factor" because it was clear from the record "that the railroad would have fired him anyway due to his false statements." *Id.* at 419. That appears to be reference to the same-action defense discussed earlier. § 42121(b)(2)(B)(iv).

The *Lemon* court also suggested that the employee's contributing-factor argument did "too much[] and . . . too little." *Lemon*, 958 F.3d at 420. To explain its position, it provided hypotheticals. On the one hand, the chain-of-events standard is too broad: "A woman quits her job after becoming frustrated over few promotion opportunities. Even though she could not have quit without taking the job in the first place, we would not say accepting the job was a contributing factor to her decision to leave it." *Id.* On the other hand, it is too narrow: "[A]n employee . . . makes a pass at his manager while reporting an injury. Discipline in that case would clearly be caused — and justified — by the harassment, whether or not it occurred when he gave his boss the injury report." *Id.*

We close our review of other circuits with the Tenth Circuit's helpful analysis in *BNSF Railway Co. v. U.S. Department of Labor*, 816 F.3d 628 (10th Cir. 2016). There, an employer learned about violations of company policy through the employee's updated injury report. *Id.* at 639. The employee could not "satisfy the contributing-factor standard merely by arguing that [the railroad] would not have known of his delays in reporting his injuries absent his filing the updated [r]eport"; nonetheless, the court found there was other substantial evidence to support that the updated report was a contributing factor to the adverse employment action. *Id.* at 639–40. "[T]he investigation that led to the firing was initiated before the investigation of whether [the employee] was responsible for the accident," the employee's supervisors allegedly discouraged his reporting, and the employment

No. 20-60274

termination occurred close in time to the protected activity. *Id.* Those additional facts allowed the employee to establish contributing-factor causation. *Id.* at 640.

Yowell distinguishes these other circuits' cases on factual bases. It is true that the relevant precedents generally involve employees who were disciplined for misconduct that was distinct from a protected activity, such as for dishonesty or stealing. In our view, though, this argument is just another way to say that reporting of an injury was inextricably intertwined with learning that the report was late. Yowell also contextualizes his case as presenting a question of "whether . . . a railroad carrier may put requirements on how an employee must engage in FRSA protected acts, and then fire an employee for not following the carrier's requirements when the employee engages in FRSA protected acts." In essence, Yowell is all but arguing that a railroad cannot require timely reporting.

We see the narrow question before us as this: If an employee's late, initially incorrect, but finally accurate report of a prior injury is what informed a railroad of an employee's violation of the obligation to report injuries promptly, must that report be considered a contributing factor under the FRSA for any adverse action? In answering the question, we know that adverse employment action that is "due, in whole or in part," to the employee's engaging in a protected activity is prohibited. § 20109(a). Indeed, "even the slightest" influence from the protected activity will invalidate the employer's adverse action. *CSX Transp.*, 564 U.S. at 692 (quoting *Rogers*, 352 U.S. at 506). FRSA liability does not arise, though, unless the employee can prove that his engaging in a protected activity was a contributing factor to the adverse employment action.

We have summarized a substantial amount of the caselaw on the contributing-factor standard to assist us in answering this narrow question as

14

No. 20-60274

perceptively as possible. There is consistent support in other circuits' analysis for what the ARB decided in this case and little authority that disagrees. We do not disagree either.

Under the FRSA, when an employee engages in a protected activity such as reporting a workplace injury, that employee is not insulated from what would otherwise be appropriate discipline for misconduct that becomes known to the employer at that time or during the course of the employer's addressing the protected activity. In simple terms, a protected activity does not by itself shield an employee from the ramifications of workplace misconduct.

We now examine the evidence in this case under the legal standard.

III.   *Applying the contributing-factor standard to this case*

The final part of our analysis is to review the facts of this case. Yowell agrees that all he has, though of course he argues that all he needs, is that FWWR learned of his failure to comply with his obligation to report timely all injuries when he made his delayed report, thereby making the protected activity of reporting an injury a contributing factor in his employment termination. There is nothing further, such as evidence that company representatives attempted to prevent his report or discouraged him from reporting.

The ARB accepted the following ALJ factual findings: Yowell was discharged "because he did not promptly or immediately report his right knee injury"; Yowell "failed to present any circumstantial evidence that [FWWR] used [Yowell's] report of injury, or his medical treatment as a pretext to his discharge"; FWWR had not inconsistently applied its clearly expressed discipline policy of prompt reporting; and the evidence "demonstrably shows [Yowell] was terminated for the sole reason that he reported his work-related knee injury on August 29, 2017, one week after it

occurred and as a result, [FWWR] terminated [Yowell] for violating its employee handbook work and safety rule."

As the ARB held, an employee may not rely solely on the fact that a protected activity is what informed the employer of wrongdoing. Instead, the focus must be on the employer's actions after learning of wrongdoing. There is unchallenged evidence in the record that it was not the fact of reporting an injury but the failure to report promptly an earlier injury that caused Yowell to be discharged.

There was no error in the ARB's decision to allow FWWR to end Yowell's employment for his failure to report his work injury promptly.

The petition for review is DENIED.

No. 20-60274

E. Grady Jolly, *Circuit Judge*, concurring:

I concur with the understanding that the ultimate holding of this opinion is, simply and succinctly: The protected activity provision cannot be interpreted to shield an employee from proper disciplinary action when the employee breaches a valid, established, and unchallenged work rule, and no legal legerdemain can make it otherwise.